UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSHUA B., on behalf of Travis D. B., )<br> )<br>        **Plaintiff**                       )<br> )<br>v.                                          )<br> )<br>ANDREW M. SAUL,              )<br>**Commissioner of Social Security,** )<br> )<br>        **Defendant**                   ) | No. 2:19-cv-00436-LEW |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) appeal raises the question of whether a vocational expert (VE) can provide competent evidence regarding a claimant's need for a special bariatric chair to perform certain work. The plaintiff seeks remand on the bases that the administrative law judge (ALJ) erred in (i) prohibiting an attorney for his brother, the now deceased claimant ("the decedent"), from asking the testifying VE about the decedent's need for a bariatric chair to accommodate his larger-than-average size and weight in the workplace, and (ii) ignoring a post-hearing affidavit on the subject from another VE.[2] *See generally* Plaintiff's Itemized

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The decedent filed concurrent claims for SSD and Supplemental Security Income (SSI) benefits, both of which were denied by the ALJ. *See* Record at 30, 211-26. The decedent sought Appeals Council review but died before the Appeals Council acted on his request. *See id.* at 15, 208-10. The plaintiff stepped in as a substitute party. *See id.* at 14. The Appeals Council thereafter *denied* the request for review of the SSD claim but *dismissed* the request for review of the SSI claim after determining that the plaintiff was not entitled to pursue that claim after the decedent's death. *See id.* at 4-11; *Eachus ex rel. Thompson v. Comm'r of Soc. Sec.*, Case No: 2:16-cv-402-FtM-MRM, 2017 WL 3866873, at *1 (M.D. Fla. Sept. 5, 2017) ("[G]enerally a claimant's claim for supplemental security income extinguishes upon a claimant's death."). The plaintiff does not challenge the Appeals Council's dismissal of the request for review of the SSI claim denial. *See generally* Statement of Errors. Therefore, only the SSD claim remains for judicial review, and only the laws and regulations applicable to that claim are cited herein.

1

Statement of Errors ("Statement of Errors") (ECF No. 11). I conclude that a VE's testimony regarding the need for a bariatric chair could constitute competent evidence, and that the failure to permit or evaluate such testimony undermined the ALJ's finding that the decedent was capable of performing work existing in significant numbers in the national economy. Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent with this recommended decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the decedent met the insured status requirements of the Social Security Act through September 30, 2015, Finding 1, Record at 33; that he had the severe impairments of obesity, diabetes, and sleep apnea, Finding 3, *id.*; that he had the residual functional capacity (RFC) to perform sedentary work except that he could occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds, could sit for six hours and stand or walk for two hours in an eight-hour workday, but needed to switch position between sitting and standing once every 15 minutes for five minutes at time without going off task, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, could never climb ladders, ropes, and scaffolds, and needed to avoid concentrated exposure to hazards such as heavy machinery, moving mechanical parts, and unprotected heights, Finding 5, *id.*; that, considering his age (26 years old, defined as a younger individual on his alleged disability onset date, October 1, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 39; and that he, therefore, had not been disabled from October 1, 2013, his alleged disability

onset date, through the date of the decision, March 19, 2019, Finding 11, *id*. at 40-41.[3] The Appeals Council declined to review the decision, *id*. at 8-11, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff argues that the ALJ erred by preventing the decedent's attorney from asking the testifying VE about the decedent's need for a special bariatric chair to accommodate his weight of over 450 pounds. *See* Statement of Errors at 1, 6-7. In prohibiting this line of questioning at the administrative hearing, the ALJ noted that the VE would not "know medically what kind of

---

[3] As discussed *supra* n.2, the plaintiff's appeal pertains only to the decedent's disability insurance benefits claim; the time period pertinent to that claim is from the decedent's alleged disability onset date, October 1, 2013, to his date last insured, September 30, 2015. *See* Findings 1, 11, Record at 33, 40; 20 C.F.R. § 404.131.

devices" the decedent would need in a work environment and explained, "That's not what [the VE is] trained in, so I'm not going to have him testify about something that he's not trained in." Record at 73-74. The plaintiff contends that the decedent's attorney was not seeking a medical opinion from the VE, but rather inquiring about the "vocational implications" of his obesity. Statement of Errors at 6-7.

Compounding this point of error, the plaintiff argues, was the ALJ's failure to consider an affidavit from another VE, David Meuse, that the decedent submitted with his post-hearing statement. *See id.* at 1, 7-10. In his affidavit, Meuse averred that "a person weighing 450 to 500 pounds or more would be unable to perform any work that satisfied the hypothetical explained to [him] – indeed any light or sedentary work, without the accommodation of a special chair that is both large enough to fit the person described and also capable of supporting that person's weight safely." Record at 309-10. The plaintiff points out that the ALJ did not reference the Meuse affidavit in her decision and erroneously stated that the decedent had not submitted any post-hearing materials. *See* Statement of Errors at 5; Record at 30. According to the plaintiff, the ALJ's failure to consider the decedent's need for a bariatric chair undermines her Step 5 findings and therefore requires remand.[4] *See* Statement of Errors at 9-10.

The commissioner acknowledges that the ALJ did not discuss the Meuse affidavit and that the question of whether the decedent required a bariatric chair was relevant to his vocational prospects, but counters that remand is not required because the decedent provided no competent evidence regarding his need for such a chair, rendering any error harmless. *See* Defendant's

---

[4] In his affidavit, Meuse opined that a person of the decedent's weight would be too heavy even for a typical bariatric chair. Record at 309. I use the term bariatric chair throughout the opinion in a more general sense to mean a larger than normal chair. *See Kelly v. Saul*, Case No. 18-cv-662-PB, 2019 WL 3492449, at *1 n.1 (D.N.H. Aug. 1, 2019) ("A bariatric chair is a special oversize chair required for individuals who, because of their size, cannot use standard chairs.").

Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 13) at 4, 7; *Maietta v. Berryhill*, No. 2:17-cv-00054-NT, 2017 WL 4387365, at *3 (D. Me. Oct. 2, 2017) (rec. dec., *aff'd* Oct. 19, 2017) (rejecting a claimant's argument that the ALJ should have considered his need for a bariatric chair because he had not provided any evidence that he required such a chair). Specifically, the commissioner argues that the VEs in this case were not competent to opine that the decedent's obesity compelled a limitation to a bariatric chair, because such an opinion would require them – as laypeople – to exercise medical judgment regarding the functional implications of raw medical data. *See* Opposition at 9, 12; *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) (noting that a layperson is, with few exceptions, "not qualified to interpret raw data in a medical record"). The commissioner also contends that the ALJ was not obligated to consider the Meuse affidavit because it was not proper rebuttal evidence and should have been submitted prior to the administrative hearing. *See* Opposition at 4-6.

### A. Vocational Experts' Knowledge and Expertise

To begin with, the commissioner is generally correct that a VE is prohibited from opining on medical issues such as a claimant's RFC. Indeed, ALJs may "not permit the VE to respond to questions on medical matters or to draw conclusions not within the VE's area of expertise." Social Security Administration, Hearings, Appeals, and Litigation Law Manual § I-2-6-74(C) (June 16, 2016); *see also, e.g.*, *Diaz v. Berryhill*, CIVIL ACTION NO. 3:17-CV-00735 (JCH), 2018 WL 4462366, at *9 (D. Conn. Sept. 18, 2018) (concluding that a VE "overstepped" his role when "he made his own independent assessment of [a claimant's] RFC based on his own review of the medical evidence"). The primary issue in this case, then, is whether the question of the

decedent's need for a bariatric chair was medical in nature or otherwise fell outside of a VE's expertise.

It does not appear that any court has directly addressed this issue.[5] Some cases, as the commissioner points out, *see* Opposition at 9, appear to suggest that the issue of bariatric chairs is medical in nature. *See, e.g., Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 794 (8th Cir. 2018) (noting that a claimant's "*physician prescribed* him a bariatric chair" (emphasis added)); *Shreeve v. Saul*, Civil No. 2:19-cv-02105-PKH-MEF, 2020 WL 5809958, at *6 (W.D. Ark. Sept. 11, 2020) (rec. dec., *aff'd* Sept. 29, 2020) (noting that a claimant had "not provided any *medical evidence*, nor any evidence beyond his own testimony, that he would be unable to use a standard workstation" due to his obesity (emphasis added)); *Clore v. Comm'r of Soc. Sec.*, CAUSE NO. 1:17-cv-00026-SLC, 2018 WL 2434039, at *6-7 (N.D. Ind. May 30, 2018) (concluding that the ALJ's rejection of a treating physician's opinion that the claimant "would require a bariatric chair to perform work in a seated position due to his morbid obesity" was "not adequately supported"); *Yeakey v. Berryhill*, No. 1:17-cv-00542-JMS-DML, 2017 WL 5562415, at *4 (S.D. Ind. Nov. 20, 2017) (discussing an ALJ's analysis of an "*opinion of a physician* who opined that a claimant would require a bariatric chair" (emphasis added)).

While these cases show that doctors sometimes prescribe bariatric chairs and/or opine that a claimant requires one, the issue does not fall squarely within the definition of a medical opinion. "A medical opinion is a statement from a medical source about what [a claimant] can still do

---

[5] The commissioner misses the mark in suggesting that *Maietta* is dispositive in his favor. *See* Opposition at 2-3. In *Maietta*, this court concluded that "[t]he lack of a factual predicate" for a claimant's "asserted need for either a bariatric or larger chair" rendered harmless an ALJ's error in ignoring VE testimony that it "probably" would be "a reasonable accommodation" to have larger size chairs brought into an office. *Maietta*, 2017 WL 4387365, at *3. Critically, in so finding, the court rejected the claimant's argument that his "testimony as a whole should be read to indicate that he required larger than normal chairs[,]" observing that (i) "the only specific need for accommodation to which [he] testified was the need for a chair without arms or sides[,]" and (ii) the VE was not "asked whether that need constituted an accommodation." *Id.* The court did not indicate that a VE is not competent to supply evidence concerning a need for a bariatric chair. *See generally id.*

despite [his or her] impairment(s)" and whether those impairments restrict the claimant's ability to meet the physical, mental, environmental, and other demands of work. 20 C.F.R. § 404.1513(a)(2). Although the commissioner attempts to frame the issue in medical terms of whether the decedent was functionally limited to a bariatric chair as a result of his impairment of obesity, *see* Opposition at 7-9, the issue is actually whether a typical workplace chair could have accommodated the decedent's size and weight, which is not a question of his functional ability so much as it is a question of the limitations of the chair.

In an effort to demonstrate that the question of a claimant's need for a bariatric chair falls outside of a VE's expertise, the commissioner overstates the complexity of the matter. Contrary to the commissioner's arguments, *see id.* at 9-10, in opining that the decedent exceeded the size and weight limits of a standard workplace chair such that he would have required a special chair, Meuse was speaking from a practical rather than medical standpoint. Such an opinion did not require Meuse to engage in medical judgment, nor did it require a multifactorial analysis of the decedent's obesity; instead, it required knowledge of the sort of chairs typically found in a workplace.[6]

By definition, VEs "must have expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (alterations, citations, and internal

---

[6] For this same reason, I am unpersuaded by the commissioner's argument that Meuse was equally unqualified as a VE to opine on matters of engineering or physics. *See* Opposition at 14. Although the plaintiff at one point framed the issue that way, it does not take an engineering or physics degree – any more than it takes a medical degree – to determine the recommended weight specifications for, or the listed weight capacity of, chairs.

quotation marks omitted). This expertise, it seems, encompasses the requisite knowledge of workplace chairs to enable a VE to testify as to a claimant's need for a larger than normal chair.

Indeed, several other courts have at least implicitly recognized VEs as competent to testify regarding a claimant's need for a bariatric chair. *See, e.g, McKim v. Saul*, Case No. CIV-18-282-RAW-SPS, 2020 WL 1222723, at *4 (E.D. Okla. Feb. 26, 2020) (rec. dec., *aff'd* Mar. 12, 2020) ("In response to questioning from the claimant's attorney, the VE testified that employers must purchase special chairs to accommodate individuals weighing more than 250 pounds and that employers may be unwilling to incur the expense of such chairs for unskilled jobs."); *Kelly*, 2019 WL 3492449, at *3-4 (implicitly accepting that a VE was qualified to opine on a claimant's need for a bariatric chair); *Jones v. Berryhill*, CASE NO. C17-965-BAT, 2018 WL 1726405, at *5-6 (W.D. Wash. Apr. 10, 2018) (statement from a VE "about a different claimant's case that standard workplace chairs measure 18-21 inches, and a person who is wider than that would require a workplace accommodation[,]" submitted for first time to Appeals Council, not outcome-determinative when claimant "apparently performed her past work without a bariatric chair"); *see also Lane v. Comm'r of Soc. Sec.*, Case No: 2:18-cv-264-FtM-UAM, 2019 WL 2724013, at *4 (M.D. Fla. July 1, 2019) ("Plaintiff cites to no evidence, *medical or vocational*, establishing that she requires a bariatric chair." (emphasis added)); *McCullough v. Comm'r of Soc. Sec.*, Case No: 8:17-cv-1088-T-MRM, 2018 WL 3619359, at *3-4 (M.D. Fla. July 30, 2018) (rejecting a claimant's argument that the ALJ erred in failing to include a bariatric chair requirement in her RFC because she "did not cite to any *medical or vocational evidence* of record that supported her statements concerning her need for a special chair" (emphasis added)).

Given the practical nature of the question, the knowledge and expertise required to be a VE, and the limited caselaw on the subject, I conclude that a VE's testimony regarding a claimant's

need for a bariatric chair could constitute competent substantial evidence on which an ALJ could reasonably rely. *See Biestek*, 139 S. Ct. at 1154 ("[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation and internal quotation marks omitted)); *Higgins*, 898 F.3d at 796 ("As always, an ALJ may rely on VE testimony about common workplace practices based upon the expert's knowledge and experience."). This means that the ALJ should have allowed the decedent's attorney to ask the testifying VE about the decedent's need for a bariatric chair, and that the ALJ could have relied on Meuse's opinion on the issue had she considered it.[7] These errors undermine the ALJ's Step 5 finding. *See, e.g., Kelly*, 2019 WL 3492449, at *3-4 (deeming remand warranted when an ALJ refused to consider a post-hearing affidavit from Meuse opining on a claimant's need for a bariatric chair).

The commissioner criticizes the Meuse affidavit on other bases, pointing out, for example, that it does not directly address the decedent but rather "a person whose weight ranges from 450 to over 500 pounds" and arguing that it is based on "overbroad generalization[s.]" Opposition at 11, 14 (citation and internal quotation marks omitted). Such criticisms, however, would be more appropriately considered by an ALJ when deciding how much to credit Meuse's opinion, and the commissioner goes too far in suggesting that these factors obviate the ALJ's error in failing to consider Meuse's affidavit. *See Biestek*, 139 S. Ct. at 1156 (claimant went "too far in suggesting that [a VE's] refusal to provide supporting data always interferes with effective cross-examination, or that the absence of such testing always requires treating an opinion as unreliable"); *see also Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010) ("[A] reviewing court cannot affirm an agency's decision on the basis of a *post*

---

[7] I note that the commissioner does not challenge Meuse's credentials as a VE. *See generally* Opposition.

9

*hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker.").

### B. Rebuttal Evidence

The commissioner further argues that the ALJ's failure to address the Meuse affidavit does not require remand because it represented an end-run around the ALJ's evidentiary ruling and was not truly rebuttal evidence because it could have been presented prior to the hearing. *See* Opposition at 4-6. Setting aside the fact that the failure to consider the Meuse affidavit was not the ALJ's only error (she also improperly prohibited the decedent's attorney from asking the testifying VE about bariatric chairs), the commissioner's argument is unavailing for several reasons.

First, far from attempting to circumvent the ALJ's erroneous evidentiary ruling, the decedent's attorney specifically asked the ALJ at the end of the hearing for an opportunity to submit post-hearing briefing to further address his objection to that evidentiary ruling and to review and respond to the vocational testimony. *See* Record at 75. The ALJ granted him that opportunity, *see id*., but erroneously indicated in her decision that he had not submitted anything after the hearing, *see id.* at 30.

Second, even if the Meuse affidavit could have been submitted prior to the hearing, "an ALJ always has discretion to reopen the hearing at any time before" her decision is mailed "in order to receive new and material evidence[,]" and "cannot categorically refuse a request to consider evidence simply because it is submitted after the hearing has concluded." *Kelly*, 2019 WL 3492449, at *3 (citation and internal quotation marks omitted); *see also Patrick S. v. Saul*, Civil No. 1:18-cv-289-DBH, 2019 WL 3814283, at *3 (D. Me. Aug. 14, 2019) (citing *Kelly* with approval). In order for a court to review an exercise of this discretion, the ALJ must explain his

or her reasoning. *See Patrick S.*, 2019 WL 3814283, at *3-4. Here the ALJ did not even acknowledge the existence of affidavit, let alone explain why she did not consider it. *See* Record at 30; *Palombo v. Berryhill*, Civil No. 17-cv-284-LM, 2018 WL 3118286, at *5 ("To the extent the ALJ did rely on [a] regulation to reject the submission of the [post-hearing] affidavit [from Meuse], she never explained her reasoning, which prevents the court from conducting any meaningful judicial review. That error justifies remanding the case." (footnote omitted)).

Third, the decedent could not have anticipated the ALJ's evidentiary ruling. Broadly speaking, the Meuse affidavit was offered in response to the hearing VE's testimony (or lack thereof).[8] Such a situation is contemplated by the commissioner's own rulings and is not uncommon. *See* SSR 96-9p, 1996 WL 374185, at *9 n.8 (July 2, 1996) ("Whenever a VE is used, the [claimant] has the right to review and respond to VE evidence prior to the issuance of a decision."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (noting that "the submission and consideration of post-hearing evidence are common in social security disability cases[,]" especially affidavits offered "to rebut vocational expert testimony which cannot be anticipated prior to hearing" (citation and internal quotation marks omitted)).

In the end, there is no practical difference between this case and *Kelly*, in which an ALJ refused to consider a post-hearing affidavit from Meuse on the topic of bariatric chairs. *Kelly*, 2019 WL 3492449, at *3. In reversing the ALJ's decision, the court concluded that the ALJ had erred by categorically refusing to consider the affidavit, explaining,

> Here, the ALJ based his step five determination on VE testimony that jobs existed in the national economy that [the claimant] could perform. Because, however, the VE who testified at the hearing could not say whether the jobs at issue required a

---

[8] Contrary to the commissioner's argument, the mere fact that Meuse misidentified the parameters of one of the ALJ's "hypothetical question[s]" does not change the responsive nature of his affidavit. *See* Opposition at 6; Record at 309. Nor does it otherwise undermine the relevance of the affidavit given that Meuse opined that "a person weighing 450 to 500 pounds or more" would be unable to perform *any* sedentary work without an accommodation of a bariatric chair. Record at 309-10.

11

> bariatric chair for someone of [the claimant's] weight, the ALJ was in no position to determine that those jobs were available to a person such as [the claimant] who required a bariatric chair. The Meuse affidavit directly addressed this issue. Thus, the ALJ was obligated to consider it before he issued his decision.

*Id.* The same is true here.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of October, 2020.

　　　　　　　　　　　　　　　　　　　　　/s/ John H. Rich III
　　　　　　　　　　　　　　　　　　　　　John H. Rich III
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge